OPINION OF THE COURT
Donald N. Silverman, J.
The defendant stands accused of burglary in the second degree, as well as several other crimes, all relating to the same transaction said to have taken place on June 26, 1989 in the Village of Tarrytown, New York. Defendant has moved to suppress tangible property. Said motion was previously granted to the extent that a pretrial hearing was ordered to determine the issues raised. That hearing was held on November 30, 1989. Testifying on behalf of the People was Detective Eugene Buonanno of the Tarrytown Police Department and on behalf of the defendant, Froliana Mezon, wife of the *197 defendant. The court makes the following findings of fact and conclusions of law:
According to Detective Buonanno on June 26, 1989, while at headquarters, he received a call from the superintendent of a series of buildings known as 177 White Plains Road. The superintendent indicated that there was an individual on the grounds whom he did not recognize and who, when approached, did not give a legitimate reason for being on the property. The detective underscored the fact that apartments in the vicinity of these buildings had been victimized by approximately 15 burglaries over the preceding few months. A detailed description of the supposed intruder was given by the superintendent over the phone.
The detective together with a partner drove in an unmarked vehicle to the buildings in question and there saw an individual identified as the defendant who matched the detailed description previously given. The defendant was seen crouched over by a door designated as apartment 81B, possibly making contact with the door. The defendant appeared to see the detectives, put an object in his pocket, walked away from the door, and proceeded directly to his car which was parked just in front of the police vehicle. As soon as the defendant started to back up his vehicle he was approached by both officers and advised to stop and shut the engine off. He was asked for his license and registration and thereupon advised the officers that his license to drive was suspended and he therefore had no license to produce.
The defendant produced a registration and insurance card, both in the name of a female owner. When asked what he was doing at those premises the defendant indicated that he was looking for the apartment of a friend. The detective emphasized that he asked the defendant for identification and the defendant could not produce any identification of any kind. The defendant was then placed under arrest for driving with a suspended license. Although the detective had no reason to suspect the defendant was armed, the defendant was frisked and a 5-to-6-inch knife was taken from the same pocket where an object was previously observed to have been placed. The detective went with the knife to the door of apartment 81B and saw fresh marks in the door lock and jam area which he determined could have been caused by that knife. The defendant was brought back to headquarters, was searched again, and on his person was found jewelry later determined to be *198 proceeds of a burglary to an apartment at the aforementioned premises.
Other than a leather pouch that was taken from the defendant’s car the detective claimed that the defendant did not have on his person a wallet of any kind. This allegation looms as an important issue in light of the cases to be discussed hereafter. Aside from the detective’s allegation that the defendant could not produce any identification the court credits the detective’s testimony in every material respect.
The defendant’s wife testified that in July 1989 she went to the Westchester County Jail and took possession of the defendant’s property which included a wallet containing, amongst other things, a resident alien card and Social Security card, both in the defendant’s name, with the former depicting his picture.
Received into evidence at this hearing were the following two items: an inventory sheet prepared by the Tarrytown Police Department, which listed a wallet belonging to the defendant, and an inventory sheet of the Westchester County Jail, which indicated that when the defendant was brought to the jail, amongst his personal possessions was a wallet.
The court credits as truthful the testimony of the defendant’s wife that the wallet contained the aforementioned identification when she obtained it from the jail.
In view of this documentary evidence, as well as Mrs. Mezon’s testimony, it is apparent to this court that Detective Buonanno was incorrect when testifying that the defendant had no identification on him when arrested.
The People claim in the first instance that the defendant’s arrest on the basis of a traffic violation was authorized since he could not produce identification (citing People v Spencer, 130 AD2d 882).
Given this court’s aforementioned finding that the defendant was in fact in possession of identification, this argument must fail.
Since the defendant did not seek to hide or falsify his name when arrested, it is highly unlikely that if asked, he would not have produced the identification on his person.
The People further argue that even if the defendant had identification his arrest was authorized by statute (Vehicle and Traffic Law §§ 155, 509) and by authority of People v Abrams (119 AD2d 682 [2d Dept 1986]).
While the Abrams case is on point, it does not appear to *199 present the correct state of law on the issue at bar. In Abrams the court states: "Driving without a license is a traffic infraction which justifies a police officer’s immediate arrest of the unlicensed operator” (supra, 119 AD2d, at 683).
The Court of Appeals in a long line of cases has found fault with arrests made for traffic offenses alone (i.e., People v Troiano, 35 NY2d 476; People v Howell, 49 NY2d 778; People v Marsh, 20 NY2d 98; see also, People v Grant, 126 Misc 2d 18).
An exception to the general rule that arrests for traffic infractions are improper exists where the driver does not have identification sufficient to prepare a traffic summons. Cases supporting this exception include People v Ellis (62 NY2d 393) and People v Copeland (39 NY2d 986). The Abrams decision relies on these two cases, but fails to observe that they contain the added element of lack of identification. In this court’s view, Abrams (supra) either establishes a new rule, or misstates the law. Since there is nothing in the decision which indicates a desire to depart from past precedent, this court will consider the latter to be true.
Consequently, this court finds the defendant was improperly arrested for a traffic infraction, the search of his person was also improper, and all evidence seized as a result of this search must be excluded as evidence at trial. This includes those items seized at the place of arrest, as well as those seized at police headquarters.
The defendant’s motion to suppress tangible evidence is therefore granted in its entirety.